UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
SUSAN SILVERMAN and STUART SILVERMAN,

         Plaintiffs,

 -against-

JOSHUA BLACKMAN, VICE ENERGY LLC, PHILIP
DADE, VICE PRODUCTIONS, LLC and VICE
PRODUCTIONS,

         Defendants.
----------------------------------------X

COMPLAINT
(Jury Trial Demanded)

13 Civ.

Plaintiffs Susan Silverman and Stuart Silverman, by their attorneys Scott A. Korenbaum, Esq. and the Law Offices of Jill R. Shellow, for their Complaint, allege as follows:

## INTRODUCTION

1. Plaintiffs Susan Silverman and Stuart Silverman (the "Silvermans") bring this action to redress the damages they have suffered to their personal property. More specifically, as a result of the defendants' fraudulent and destructive actions, the Silvermans sustained substantial damage to their home located at 8 Marion Lane, East Hampton, New York (the "Home").

## JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. §§ 1332, jurisdiction is proper as there is complete diversity between the parties, and the amount in controversy exceeds $75,000.

3. Pursuant to 28 U.S.C. § 1391(b), venue is proper as the events or omissions giving rise to the Silvermans' claims occurred in Suffolk County.

## PARTIES

4. The Silvermans are citizens of the State of New York, County of Kings. They are

the lawful owners of the Home.

5. Defendant Joshua Blackman, upon information and belief, is a citizen of Texas. At all times relevant to this Complaint, Blackman rented the Home from the Silvermans.

6. Defendant Vice Energy LLC ("Vice Energy"), upon information and belief, is a limited liability company established under the laws of Texas. Upon further information and belief, Blackman is a member of Vice Energy. At all times relevant to this Complaint, Vice Energy rented the Home from the Silvermans.

7. Defendant Vice Productions LLC is, upon information and belief, a limited liability company established under the laws of California. Upon further information and belief, it was instrumental in the production of a reality-based television show known as "pArty of 5."

8. Defendant Vice Productions is, upon information and belief, a company established under the laws of California. Upon further information and belief, it was instrumental in the production of a reality-based video production to be commercially distributed as "pArty of 5."

9. Defendant Philip Dade, upon information and belief, is a citizen of the State of California. Upon further information and belief, he is a member and/or officer of both Vice Productions LLC and Vice Productions.

## FACTS UNDERLYING THE COMPLAINT

10. The Silvermans are the rightful owners of the Home. On March 17, 2012. Blackman, on behalf of himself and Vice Energy, signed a lease with the Silvermans for the rental of the Home for the month of June 2012 (the "Lease"). The terms of the Lease ran from May 30, 2012, to June 30, 2012, and made clear that it was for "residential purposes only by the

tenant."

11. Notwithstanding the explicit limitations on Blackman's use of the Home in June 2012, the defendants specific intention was to use the Home in connection with a commercial venture referred to as "pArty of 5," in which the exploits of a group of partygoers is followed for five days of partying in different cities throughout the world.

12. Defendants never informed the Silvermans that they intended to use the Home as a location for "pArty of 5." Similarly, at no time did Blackman, or anyone else affiliated with the defendants, ask the Silvermans for permission to use images of the outside or inside of the Home or the surrounding property for a commercial venture.

13. Following the commencement of the Lease, defendants acted on their intent to use the Home for the purpose of producing "pArty of 5." On June 5, 2012, defendant Dade submitted an application (the "Application") to the Town of East Hampton for a Mass Gathering Permit for the dates of June 9, 16, 23 and 29, 2012.

14. The Application was permeated with lies. For example, Dade stated that he lived at the Home – a review of Dade's Facebook postings also reveal that he lived at the Home throughout June. Dade's name does not appear on the Lease, nor was his occupancy ever disclosed to or approved by the Silvermans.

15. In the Application, Dade also fraudulently indicated that the purpose of the gathering was a friends and family barbecue. This was false.

16. The Application required the defendants to state that the owners had consented to the use of the Home for the requested purpose. The Silvermans never agreed to allow the Home to be used for any commercial purpose much less to be turned into the set for a reality-based

-3-

television show or other entertainment programming. To establish the Silvermans' consent, Dade submitted to the Town of East Hampton a Lease that was materially different from the Lease that had been signed by Stuart Silverman. For example, on the lease submitted to the Town, the tenant was no longer Vice Energy LLC or Mr. Blackman. Rather, it was Vicenturion LLC.

17. Similarly, the lease submitted to the Town did not contain the Landlord's initials or signature, which did appear on the Lease actually executed by Blackman and the Silvermans.

18. Defendants' venture was widely publicized on the internet, and elsewhere, identifying the Home as the "Vice Hamptons Crib." These parties, including the "Amir Famous BBQ & JB B-Day" party on June 23, 2012, resulted in substantial damage to the Home and to the Silvermans personally.

19. Upon information and belief, defendants held parties at the Home on June 9, 16, and 23, 2012. These parties were held without the Silvermans' consent or their knowledge.

20. Pictures of the Home, before, during and after the parties, were posted on the internet throughout the month of June, some showing women in various stages of undress. The Home's address, 8 Marion Lane, was denominated "the Vice Hamptons Crib" for the purpose of promoting "pArty of 5." As a result of these connections, the Silvermans are now viewed by the members of the community as running a house of ill repute.

21. More than half way through the Lease the Silvermans learned from neighbors that large, loud parties had been taking place at the Home. The Silvermans reached out to Blackman, who assured them that any parties were small and that everything was under control. Blackman's representations were false.

22.     A few days later the Silvermans received another call from a neighbor, who also advised them that large and boisterous parties were being held at the Home, drunken men were wandering the street during the day, claiming that they were staying at the Silvermans. Obviously concerned, the Silvermans informed Blackman that they were coming to visit the Home on June 23rd, as permitted by the Lease.

23.     The Silvermans arrived at the Home on June 23rd. at approximately 11:00 a.m. They confronted Blackman about the large parties. He denied they were having large parties or that anything improper was taking place.

24.     Feeling helpless, the Silvermans left the Home. They returned to the Home at approximately 4:30 p.m. Upon their arrival they found about 50 cars in the road, security guards checking IDs as people came to and left the Home, and at least 100 persons all over their yard. They also learned that the host of the party was Amir.

25.     The Silvermans left the Home and went to the police station. They were told that a permit had been issued but that it was not available for them to review. Disgusted and tired, the Silvermans returned to Brooklyn.

26.     On June 24, 2012, the Silvermans learned their Home and "pArty of 5" was advertised on the internet. On June 25, 2012, the Silvermans retained counsel to assist them. On June 27, 2012, the Silvermans learned of the misrepresentations contained in the Application.

27.     On June 27, 2012, the police went to the Home, where they encountered Blackman. They made it clear to him that he was in violation of the Lease, and suggested he not hold the party advertised for June 29, 2012, and he should vacate the Home. He did so.

28.     As a result of the defendants' actions, the Home was left in shambles with garbage

and abandoned equipment all over the backyard. For example, to mention just some of the damage, the Silvermans must repair and clean the Bluestone throughout the patio and outdoor kitchen area and inside the Home at a cost of nearly $20,000.

29. Because of the unauthorized parties, door handles and fixtures throughout the Home were also broken. Locks had to be changed. Silverware was missing. Sod has to be purchased and laid to repair the grass that had been torn up. A very expensive couch has to be replaced because, despite the Silvermans best efforts to clean it, there were sperm stains that could not be removed.

30. The Silvermans have also been harmed psychologically. Pictures of the Home, before, during and after the parties, were posted on the internet throughout the month of June, some showing women in various stages of undress. The Home's address, 8 Marion Lane, was denominated "the Vice Hamptons Crib" for the purpose of promoting "pArty of 5." As a result of these connections, the Silvermans are now viewed by the members of the community and potential tenants as running a house of ill repute.

## FIRST CLAIM FOR RELIEF
(Breach of Contract – Blackman and Vice Energy)

31. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 30, as if fully set forth herein.

32. The Silvermans, Blackman and Vice Energy had a valid contract for the rental of the Home.

33. By sponsoring or permitting the parties to be held at the Home throughout the month of June 2012, defendants Blackman and Vice Energy breached the terms of the Lease,

including paragraph 11 of the Lease.

34. The Silvermans satisfactorily performed their obligations under the Lease.

35. As a result of defendants Blackman's and Vice Energy's conduct, the Silvermans have suffered damages.

## SECOND CLAIM FOR RELIEF
(Fraud – All Defendants)

36. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 35, as if fully set forth herein.

37. The defendants were all involved in the development of "pArty of 5."

38. The defendants were all involved in hosting, sponsoring, publicizing and/or participating in an unauthorized commercial venture at the Home, to wit throwing parties that were to be used for episodes of "pArty of 5."

39. When Blackman signed the Lease, he was acting on behalf of all defendants.

40. At the time he signed the Lease, Blackman intended to use the Home as a location for creating episodes of "pArty of 5."

41. Notwithstanding the prohibitions contained in the Lease that forbade any use of the Home for a commercial venture, Blackman never told the Silvermans that he intended to use the Home as a location for creating episodes of "pArty of 5."

42. If the Silvermans had known of Blackman's and the defendants' intended use of the Home, they would not have signed the Lease with him.

43. As a result of defendants' conduct, the Silvermans have been injured.

## THIRD CLAIM FOR RELIEF
(Trespass – All Defendants)

44. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 43, as if fully set forth herein.

45. By allowing the parties to be held at the Home, defendants either entered the Home without permission, or permitted other persons to enter the Home without permission.

46. As a result of the defendants' actions, the Silvermans have been injured.

WHEREFORE, the Silvermans pray for the following relief:

(a) compensatory damages in an amount to be determined at trial;

(b) punitive damages in an amount to be determined at trial;

(c) reasonable attorneys' fees, as permitted by paragraph 11 of the Lease;

(d) costs and expenses; and

(e) such other and further relief as is just and proper.

Dated: New York, New York
       March 13, 2013

        SCOTT A. KORENBAUM, ESQ.
        Attorney for Plaintiffs
        11 Park Place, Suite 914
        New York, New York 10007
        (212) 587-0018

        LAW OFFICES OF JILL R. SHELLOW
        111 Broadway, Suite 1305
        New York, NY 10006
        (212) 792-4911

By: _____
            Scott A. Korenbaum